# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **SYLVESTER CHARLES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-00193-DCG** |
| | § | |
| **HECTOR GUTIERREZ SANCHEZ, and** | § | |
| **TRANSPORTADORA NORTE DE** | § | |
| **CHIHUAHUA,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Presently before the Court are "Objection to the Reliability of Opinions Offerd [(sic)] By Plaintiff's Retained Expert, Dr. Boris Kaim" ("Dr. Kaim Motion") (ECF No. 74), filed by Defendants Hector Gutierrez Sanchez and Transportadora Norte de Chihuahua S.A. de C.V. (collectively "Defendants") on November 10, 2014; "Motion to Strike and Exclude all Opinions of Curtis Flynn" ("First Flynn Motion") (ECF No. 105), filed by Defendants on January 6, 2015; and "Objection to Plaintiff's Designation of Curtis Flynn and Preliminary Expert Report" ("Second Flynn Motion") (ECF No. 115), filed by Defendants on January 20, 2015. Plaintiff Sylvester Charles ("Plaintiff") filed his corresponding Responses on November 17, 2014 ("Dr Kaim Resp.," ECF No. 79); January 13, 2015 ("First Flynn Resp.," ECF No. 110); and January 27, 2015 ("Second Flynn Resp.," ECF No. 116). Defendants replied, respectively, on November 24, 2014 ("Dr. Kaim Reply," ECF No. 82); January 20, 2015 ("First Flynn Reply," ECF No. 114); and January 30, 2015 ("Second Flynn Reply," ECF No. 118). After reviewing the parties' filings and applicable law, the Court hereby denies Defendants' motions.

## I.  BACKGROUND

On or about January 4, 2013, Plaintiff filed his Original Petition in the County Court at Law Number Six of El Paso County, Texas, against Defendants. *See* Notice of Removal, Ex. A at 1, ECF No. 1.  Therein, Plaintiff alleges that on September 19, 2011, he was injured in a motor vehicle accident as a result of Defendants' negligence and seeks damages under Texas law.  *Id.* at 3–6.  On May 23, 2013, Plaintiff filed his First Amended Petition in state court.  *Id.* at 33.

On June 14, 2013, Defendants removed the above–styled cause to this Court.  *See* Notice of Removal 1.  Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), Plaintiff retained and designated experts to testify on his behalf.  *See* First Flynn Resp., Ex. 2 ("6–20–2014 Am. Expert Designation").

### A.  *Dr. Kaim Motion Background*

Boris Kaim, M.D., ("Dr. Kaim") was retained to testify about Plaintiff's alleged traumatic brain injury, the cause of the injury, and the impairment and limitations caused by the injury.  *See id.* at 2; Dr. Kaim Mot., Ex. A ("Dr. Kaim's Expert Report").  On October 21, 2014, Defendants conducted a deposition of Dr. Kaim.[1]  Following the deposition, Defendants filed the Dr. Kaim Motion, arguing that Dr. Kaim's expert testimony should be excluded because it is unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  On December 19, 2014, the Court ordered additional briefing from the parties.  *See* Order Requiring Suppl. Briefing, ECF No. 99.  Plaintiff filed his brief on December 30, 2014.[2]  *See* Pl.'s Brief.

---

[1]  Neither Defendants nor Plaintiff attached a complete copy of the October 21, 2014, deposition of Dr. Kaim in their initial briefing.  Plaintiff subsequently provided the full deposition in his supplemental briefing.  *See* Pl.'s Brief, Dr. Kaim Dep., Oct. 21, 2014, ECF No. 103.

[2]  Plaintiff's brief was timely despite Defendants' claim to the contrary.  *See* Defs.' Brief 2, ECF No. 104.  In its Court Order Requiring Supplemental Briefing, the Court stated that the filing deadlines were firm and no time extensions would be granted.  *See* Order Requiring Suppl. Briefing at 2.  Plaintiff's deadline to file his brief was December 29, 2014.  *See id.*  The internal ECF time stamp shows that

In his brief, Plaintiff attached a supplement from Dr. Kaim dated December 23, 2014, to serve as an addendum to his earlier expert report. *See* Pl.'s Brief, Addendum to Report ("Addendum"). Defendants replied on January 5, 2015. *See* Defs.' Brief.

## B.   First Flynn Motion Background

In his Amended Expert Designation dated June 20, 2014, Plaintiff designated Curtis Flynn of Flynn & Associates, Inc., an accident reconstructionist, to testify regarding the cause, effect, and negligence of various parties regarding the motor vehicle accident at issue. *See* 6–20–2014 Am. Expert Designation at 1–2. On July 16, 2014, Plaintiff again amended his expert designation, adding John J. Flynn as an expert along with the previously identified Curtis Flynn of Flynn & Associates, Inc., to also testify regarding the cause, effect, and negligence of various parties regarding the motor vehicle accident at issue. *See* First Flynn Resp., Ex. 3 at 2 ("7–16–2014 Am. Expert Designation"). Plaintiff concurrently submitted an expert report signed by John J. Flynn and dated June 27, 2013. *See* First Flynn Resp., Ex. 3, ("J. Flynn Preliminary Report"). On December 18, 2014, Plaintiff submitted a supplement to the accident reconstruction report, this one signed by Curtis Flynn and dated December 15, 2014. *See* First Flynn Mot. 2; First Flynn Mot., Ex. B ("C. Flynn Report"). Defendants filed the First Flynn Motion on January 6, 2015, seeking to strike the C. Flynn Report as untimely and asking that the Court exclude Curtis Flynn as an expert witness. *See* First Flynn Mot. 1–10.

---

Plaintiff filed his brief on December 30, 2014, at 12:36 a.m. CST. *See* Pl.'s Brief, ECF No. 100. This Court, however, sits in the El Paso Division of the Western District of Texas, which operates in the Mountain Time Zone, where the time is one hour earlier. Federal Rule of Civil Procedure 6(a)(4)(A) defines the last day for electronic filing as "midnight in the court's time zone . . . ." Consequently, Plaintiff actually filed his brief on December 29, 2014, at 11:36 p.m. MST. Because the CM/ECF system is on Central Time, the record misleadingly displays that the filing occurred on December 30, 2014, rather than the correct date of December 29, 2014.

### C. Second Flynn Motion Background

On January 7, 2014, the Court set both the Dr. Kaim Motion and the First Flynn Motion for hearing. *See* ECF No. 106. The Court conducted the hearing on January 15, 2015. Following that hearing, Plaintiff filed a "Supplemental Brief Re: Response in Opposition to Defendant's Motion to Strike Flynn" (ECF No. 113) as a sur–reply to the fully briefed First Flynn Motion. Plaintiff, however, did not seek leave to file a sur–reply, and therefore the Court will not consider the filing in relation to that motion. Defendants also filed a motion on January 20, 2015, seeking to strike the J. Flynn Preliminary Report on the grounds that it fails to comply with the Court's Scheduling Order and the Federal Rules of Civil Procedure. *See* Second Flynn Mot. 1–3.

## II.  LEGAL STANDARD

Although state law governs the substance of the case, whether an individual is qualified to testify as an expert is a question of federal law.[3] *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002) (citing Fed. R. Evid. 104(a)). The Court has broad discretion in deciding whether or not to admit expert testimony. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 460 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). It provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." Fed. R. Evid. 702. The expert's testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of

---

[3] The parties' briefing of admissibility of expert testimony under Texas law is therefore inapposite.

reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* The party seeking to introduce the expert witness bears the burden of proof. *See Moore*, 151 F.3d at 276.

Generally, "an expert is permitted wide latitude to offer opinions, including those not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. Trial courts act as gatekeepers, ensuring that the expert testimony is relevant and reliable. *Id.* at 596–97. In that capacity, the Court has wide discretion to decide whether the testimony is reliable as well as "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). While the Supreme Court has provided some guidance on how to determine an expert's reliability under certain circumstances, it has acknowledged that "[t]oo much depends upon the particular circumstances of the particular case at issue" to set out rigid requirements to test reliability. *Id.* at 150.

## III.  ANALYSIS

### A.  *Dr. Kaim Motion*

Defendants argue that Dr. Kaim's expert testimony should be excluded based on lack of reliability because "(1) his conclusions fail to rule out alternative causes of Plaintiff's alleged [traumatic brain injury ("TBI")], such as previous trauma; (2) his conclusions lack objective basis; (3) [his] opinion lacks sufficient underlying facts or data; and (4) [his] opinion lacks verifiable scientific methodology." Dr. Kaim Mot. 2; *accord* Dr. Kaim Reply 1. The Court considers each ground for exclusion in turn.[4]

---

[4] Defendants do not dispute that Dr. Kaim is a qualified expert witness or that his testimony will assist the trier of fact. The Court will therefore confine its analysis to the issue of reliability.

## 1.  Failure to Rule Out Alternative Causes

Defendants first argue that Dr. Kaim's opinion is unreliable because "Dr. Kaim has totally failed to rule out [Plaintiff's] prior conditions and prior trauma to his brain as alternative causes of his alleged complaints in this lawsuit." Dr. Kaim Mot. 4.  Plaintiff responds that Dr. Kaim's opinion is reliable based on his personal examinations of Plaintiff and his review of the pertinent medical records.  *See* Dr. Kaim Resp. 4–10.

In his deposition, Dr. Kaim admitted that he had not been provided and did not review all of Plaintiff's medical records:

> Q.      Doctor, have you ever seen the first visit of what [Plaintiff] complained to William Beaumont?
> A.      He complains of headaches and bad memory.
> Q.      No.  I'm asking have you seen actually the first visit of what happened when he was taken by the scene of the accident.
> A.      I don't think so.  I don't think that I have in my records.

Dr. Kaim Dep. 16:22–17:4.  In fact, during the course of the deposition, Dr. Kaim was presented with multiple medical documents that he admitted to not having ever reviewed before.  *See id.* at 64:10–68:22 (Dr. Kaim stating he had not previously reviewed medical records from William Beaumont dated October 25, 2011); *id.* at 79:16–19; 81:3–5 (Dr. Kaim stating that he had not previously reviewed the triage doctor's notes from the date of the accident); *id.* at 86:7–88:23 (Dr. Kaim stating that he had not seen a medical record dated January 2012 from William Beaumont); *id.* at 111:4–9 (Dr. Kaim stating, "I just saw [the records] for the first time now.").  Near the end of the deposition, Dr. Kaim was asked what he based his expert medical opinion on.

> Q.      In this case, the sole basis of the opinions you have are on your office visits with [Plaintiff], your examination of [Plaintiff], your review of the PET scan, and your review of Dr. Moon's interpretation of the PET scan, correct?
> A.      Yes.

Dr. Kaim Dep. 168:2–7.

Defendants argue that because Dr. Kaim's opinion did not take into account Plaintiff's complete past medical records, he was unable to properly exclude prior conditions, illnesses or injuries as a possible alternative cause of Plaintiff's alleged injuries, thus making his expert opinion unreliable. *See* Dr. Kaim Mot. 6; Dr. Kaim Reply 2–3.   Defendants argue that Plaintiff's military medical records show that Plaintiff self–reported that he was struck on the head and knocked out cold as a result of a previous motor vehicle accident. *See* Dr. Kaim Mot., Ex. B at 6.[5]  Plaintiff subsequently complained of painful, constant, and recurring headaches along the right occipital area of the head, along with other related symptoms such as depression, suicidal thoughts, sensitivity to light and blurred vision. *See id.* at 8, 12, 14; Dr. Kaim Mot., Ex. C at 6.[6]  Defendants draw attention to the fact that at his prescreening at the Mentis Neuro Rehabilitation facility, Plaintiff stated that he had suffered multiple traumatic brain injuries during deployment, including being knocked to the ground while in combat during his deployment. Dr. Kaim Mot., Ex. B at 6.

In medical causation cases, the Fifth Circuit has stated that an expert should consider and exclude other possible causes of injury when forming his or her opinion. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005).  In *Viterbo*, a non–treating testifying doctor was excluded as a testifying expert when he failed to consider that the plaintiff had a family history of some of the same symptoms for which he was claiming damages. *See Viterbo*, 826 F.2d at 423.   Notably, the doctor had relied solely on the plaintiff's own account of his medical history. *Id.* The Fifth

---

[5] The Court adopts and cites to ECF pagination in lieu of this particular exhibit's internal document numbering.  Defendants' Exhibit B is Plaintiff's military medical record from the William Beaumont Medical Center ("William Beaumont").

[6] Defendants' Exhibit C is a medical record for Plaintiff from the Mentis Neuro Rehabilitation facility.

Circuit held that the doctor's testimony was unreliable because the medical history the doctor relied on "was incomplete in a critical area." *Id.*

The Fifth Circuit again held in *McNabney* that a medical–causation expert's testimony was unreliable, where the expert failed to exclude other possible causes of injury, in part because he was unaware of the plaintiff's past medical history. *See McNabney*, 153 F. App'x at 295; *see also Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 522–23 (E.D. La. 2002) (holding that numerous inconsistencies and omissions in the patient's self–reported oral history did not provide the doctor with a sufficient factual basis to arrive at a reliable diagnosis). The expert reviewed only the patient's deposition testimony, which did not discuss her medical history. *See McNabney*, 153 F. App'x at 295; *but see Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 957 (S.D. Tex. 2008) ("A doctor's expert testimony 'should not be excluded under *Daubert* solely on the ground that his causation diagnosis was based only on his patient's self–reported history.'" (quoting *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000))).

An expert, however, need not conduct "an exhaustive search . . . to 'disprov[e] or discredit[] every possible cause other than the one espoused by him', . . . but, an expert must be aware of the plaintiff's pertinent medical history." *McNabney*, 153 F. App'x at 295 (alterations in original) (quoting *Viterbo*, 826 F. 2d at 421, 424); *see also Brooks v. Goettl*, No. A–05–CA–642–LY, 2006 WL 3691000, at *1, *4 (W.D. Tex. Dec. 12, 2006).

Defendants argue that, similar to *McNabney*, the prior conditions, illnesses and injuries described in the unreviewed medical records are significant "in light of the fact that [Plaintiff] suffered similar symptoms that he now attributes to the September 19, 2011[,] accident and his alleged complaints, including TBI." Dr. Kaim Mot. 6.

The Court has reviewed the medical records at issue and does not believe that Dr. Kaim's alleged lack of knowledge as to their content renders his opinion about the causation of Plaintiff's condition inadmissible.  First, in his original expert report, Dr. Kaim considered that another traumatic injury could have caused the brain trauma, but ultimately concluded and explained that the most probable cause was the motor vehicle accident of 2011.  *See* Dr. Kaim's Expert Report 1–2.  Second, it is undisputed that Dr. Kaim did not review Plaintiff's medical records from William Beaumont prior to his deposition.  However, at least one of the records from that facility provided to the Court dated June 25, 2012, lists Plaintiff's "[history] of multiple [traumatic brain injuries] during deployment to Iraq."  Dr. Kaim Mot., Ex. C at 6.  In response to a question regarding whether he had reviewed any other records prior to his deposition, Dr. Kaim reported that he did review these records from the Mentis Neuro Rehabilitation facility.

> Q.     I'm going to show it to you later. I just wanted to check to just kind of confirm that as far as your records, you have not reviewed any other records in arriving at your opinions, correct?
> A.     No.  I saw the records for Mentis, which is an institution for treatment of traumatic brain injury, where he was before.

Dr. Kaim Dep. 17:7–13.

It is important to note, however, that Dr. Kaim disputes the fact that Plaintiff was ever diagnosed with TBI prior to the underlying motor vehicle accident at issue in this case.  *See* Dr. Kaim Dep. 170:12–171:3 (At the conclusion of his deposition, after reviewing the presented medical records, Dr. Kaim stated that he "didn't see any information that he had traumatic brain injury prior to the accident.").  In the course of his deposition, Dr. Kaim was presented with a medical record from William Beaumont dated October 25, 2011.  *See* Dr. Kaim Dep. 64:10—68:22.  The record states in pertinent part:

> History of traumatic brain injury (PERSONAL HISTORY OF TRAUMATIC BRAIN INJURY (TBI) NOT RELATED TO GLOBAL WAR ON TERRORISM (GWOT)[)] . . . . He had at least a mild to moderate TBI following the motor vehicle accident of September 21, 2011[,] as stated in the history above.

Dr. Kaim Resp., Ex. 13 at 1.  Dr. Kaim examined the record and interpreted this part of the entry as a diagnosis, and not Plaintiff's self–reported medical history.  *See* Dr. Kaim Dep. 113:8–12, 115:11–116:7.  While Defendants may have their own interpretation as to its meaning, the entry is written in such a way that reasonable minds could differ.  This is a question left to the jury. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996))).

The circumstances of Dr. Kaim's deposition testimony are actually very similar to those in *Lilley*.  In *Lilley*, a district court held that a neurosurgeon's lack of knowledge as to the plaintiff's history of previous back injuries did not render his expert opinion about causation inadmissible.  Unlike *McNabney*, the expert in *Lilley* had an opportunity to review the medical records during his deposition and reassess his opinion.  *See Lilley*, 567 F. Supp. 2d at 958–59. The court noted that the neurosurgeon reviewed the medical records during the deposition and distinguished the plaintiff's medical condition before and after the incident to show why the incident was the likely cause of the alleged injury.  *See id.*

Similarly, Dr. Kaim had an opportunity to review some of the previously unprovided medical history during his deposition, including the October 25, 2011, William Beaumont medical record.  *See, e.g.*, Dr. Kaim Dep. 64:16–65:24, 79:16–21, 82:15–84:24, 86:7–87:21, 88:24–91:3.  Dr. Kaim was then asked to reassess his opinion in light of those records:

> Q.     Based on your reading of his report and your examination, the records that you saw here today and the PET scan that you said you have seen it two or three times, what is your opinion — what is you diagnosis of Sylvester Charles?
>
> A.     [My opinion] [i]s that this gentleman suffered a traumatic brain injury, that it has been exacerbated and is becoming worse. . . . So the situation is — the symptoms are typical of traumatic brain injury.

*Id.* at 97:16–98:1. Dr. Kaim based his unchanged opinion in part on the fact that Plaintiff's

medical condition showed a "dramatic change at the time of the accident, after the accident." *Id.*

at 64:3–5. In regards to whether the injuries were caused during Plaintiff's deployment, Dr.

Kaim reviewed the October 25, 2011, medical report from William Beaumont that noted that

Plaintiff "was exposed to several blasts during his deployments but was never adversely affected

by any of the explosions" and that Plaintiff's history of traumatic brain injury was "not related to

[the] global war on terrorism." *Id.* at 65:1–12; *accord* Dr. Kaim Resp., Ex. 13 at 1.  Dr. Kaim

also reviewed and specially emphasized an entry that described similar symptoms that predated

the accident, such as pain in Plaintiff's head, dizziness, and light–headedness, but also focused

on "something very important" that was not previously in the records, namely Plaintiff's

"[d]ifficulty in finding the right words . . . [which] indicates that there is a disorder of the brain

and specifically more in the left frontal region in right–handed people." Dr. Kaim Dep. 32:13–

33:7.

    It is clear that Dr. Kaim's opinion was not "incomplete in a critical area" and that he was

"aware of [P]laintiff's pertinent medical history."  Despite knowledge of the Mentis Neuro

Rehabilitation facility medical record, Dr. Kaim reiterated that he "base[d] [his] opinions on [his]

own examination" and "rel[ied] only on [his] own findings." Dr. Kaim Dep. 17:7–18.  After

examining the October 25, 2011, William Beaumont medical record, Dr. Kaim explained how

the findings in that record were consistent with his conclusions and stated that his expert opinion

remained unchanged.  *See* Dr. Kaim Dep. 65:17–22, 66:14–19.  It is apparent from these

exchanges that Dr. Kaim considered at least some of the medical records from the Mentis Neuro

Rehabilitation facility and some of the William Beaumont medical records before reconsidering

his own opinion.[7] Moreover, unlike *Viterbo* where the excluded expert relied solely on the

plaintiff's own account of his medical history and did not treat him at all, Dr. Kaim personally

treated Plaintiff and examined him on a number of occasions.

The Court is persuaded that Dr. Kaim properly considered and discounted alternative

causes for Plaintiff's injuries.  Dr. Kaim reviewed Plaintiff's pertinent medical records prior to

forming his expert opinion.  Any alternative causes not previously considered were considered

and explained by Dr. Kaim when he examined additional medical records during his October 21,

2014, deposition.  Accordingly, the Court denies Defendants' Dr. Kaim Motion on this ground.

**2.  Objective Basis for Conclusions**

Defendants also argue that Dr. Kaim's methodology for diagnosing Plaintiff's complaints

is unreliable.  *See* Dr. Kaim Mot. 6.  Defendants state that in making his diagnosis, Dr. Kaim

ignored the following objective test results: "1) normal CT scan readings by the treating

radiologist of Mr. Charles' head; 2) normal MRI readings by the treating radiologist of Mr.

Charles' brain; and 3) normal electroencephalogram readings by Dr. Kaim of Mr. Charles'

brain."  *Id.* at 7.  Defendants acknowledge that Dr. Kaim considered an objective PET scan, but

argue that Dr. Kaim relies on subjective information from Plaintiff to reach a flawed conclusion.

*Id.*  Defendants present, in contrast, their own expert witness whose medical opinion differs from

Dr. Kaim's.  *Id.* at 8.

Over the course of seven clinical visits, Dr. Kaim ordered, performed, or reviewed an

EEG, a TSH, an EMG, and a PET scan.  *See* Dr. Kaim Resp. 5.  Defendants do not argue that the

---

[7]  Dr Kaim was explicitly asked if, based on Plaintiff's medical history, including the records from the Mentis Neuro Rehabilitation facility, the alleged injuries were caused as a result of Plaintiff's deployment in Iraq.  Dr. Kaim Dep. 63:19–64:9.  Dr. Kaim answered, "No."  *Id.*

tests themselves are not objective, but instead take issue with Dr. Kaim's interpretation of those results and conclude that because his opinion is different than their own expert's opinion, Dr. Kaim must be relying overmuch on Plaintiff's subjective complaints. *See* Dr. Kaim Mot. 7–8. However, in his deposition, Dr. Kaim gave his reasoning for forming his opinion based on those tests. *See, e.g.*, Dr. Kaim Dep. 22:7–24:14, 35:6–37:2:, 92:17–95:6.

The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. *See 14.38 Acres of Land*, 80 F.3d at 1078 (quoting *Daubert* 509 U.S. at 596). Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility. *See Daubert*, 509 U.S. at 596 (citation omitted) ("Vigorous cross–examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Any flaws in Dr. Kaim's diagnosis can be properly addressed through cross–examination and the adversarial process. Accordingly, the Court denies Defendants' Dr. Kaim Motion on this ground.

### 3. Sufficient Underlying Facts or Data and Verifiable Scientific Methodology

#### a. Timeliness of Addendum

Following this Court's Order Requiring Supplemental Briefing, Plaintiff filed an addendum to Dr. Kaim's expert report. In that Addendum, Dr. Kaim noted that he often reviewed the pertinent medical literature in the areas of neurology and psychiatry and was a subscriber to many research journals. *See* Addendum 1. Dr. Kaim also provided a bibliography of thirty–one journal articles and medical studies that examined the use and efficacy of PET brain scan in the evaluation of TBI. *See id.*, Exs. ECF Nos. 100–103.

Defendants object to the filing of the Addendum.  Defendants argue that they will be unfairly prejudiced if the "Court accepts the new opinions of Dr. Kaim and newly produced literature as the basis for Dr. Kaim's opinions . . . ." Defs.' Brief 5.

If the Addendum is a new report rather than a supplement, the disclosure is untimely in violation of Federal Rule of Civil Procedure 26(a)(2)(D) and the Court's Scheduling Order.  *See* Scheduling Order 2, ECF No. 25.  In that case, the Court must determine whether the violation is either justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  If the Addendum is a supplement to his original report, then the Court must consider if it was timely under Rule 26(e).

Under Rule 26, a party is under a duty to supplement an expert disclosure if the party "learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  If a party fails to disclose information required by Rule 26(a) or 26(e)(1), the party may be barred under Federal Rule of Civil Procedure 37(c) from using the information that was not disclosed.  *See* Fed. R. Civ. P. 37(c).

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction likely depends on the facts of the case."  *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, MDL No. 1446, 2007 WL 5023541, at *8 (S.D. Tex. Feb. 1, 2007) (quoting *Gilbane Bldg. Co. v. Downers Grove Cmty. High School Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *8 (N.D. Ill. Apr. 5, 2005)).  A supplemental expert report however, necessarily contains information that was not expressed in the original report, or there would be no need to supplement.

After reviewing the reports and deposition submitted with the briefs it is apparent that substantively Dr. Kaim's Addendum is not a new opinion. Rather, it presents the scientific studies that underlie the methodology used to reach his original conclusion. By supplementing Dr. Kaim's earlier report, Plaintiff is acknowledging that the original report was incomplete or incorrect. While the Court is sympathetic to Defendants, who first identified the missing information in Dr. Kaim's original expert report, supplementation may be proper even when it is in response to questions or challenges to the expert's opinion raised by the opposing party. *See In re Encon Corp.*, 2007 WL 5023541, at *9 (citation omitted); *Wilson*, 2003 WL 22012673, at *7 (holding that supplementation of an expert report was proper even if it was done as a direct or indirect result of the fact that opposing counsel had pursued the subject of supplementation at the expert's deposition); *Confederated Tribes of Siletz Indians v. Weyerhaeuser Co.*, No. CV 00–1693–PA, 2003 WL 23715981, at *2 (D. Or. Jan.21, 2003) (allowing supplemental report and supplemental expert testimony that was disclosed in direct response to opposing counsel's challenges to the original expert report). Furthermore, even though Defendants assert that they will suffer prejudice, they do not specify how. The Addendum does not alter the substance of Dr. Kaim's original expert opinion; Dr. Kaim's original causation theory remains unchanged and his ultimate conclusions do not differ. However, if Defendants wish to designate a rebuttal expert or file a supplemental report to dispute specifically the studies provided by Dr. Kaim in his Addendum, the Court grants Defendants leave to do so. Accordingly, the Court overrules Defendants' objection to the timeliness of Dr. Kaim's Addendum.

b. *Sufficient Underlying Facts or Data and Verifiable Scientific Methodology*

The Court now returns to its determination of the reliability of Dr. Kaim's expert opinion. Defendants cite to Texas state law for the proposition that an expert's testimony is unreliable if

the underlying foundational data is unreliable or, even if the underlying data is sound, if the expert draws conclusions from that data based on flawed methodology. *See* Dr. Kaim Mot. 9 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). Defendants contend that because "Dr. Kaim did not provide any medical literature, scientific studies or methodology in response to Defendants' subpoena duces tecum, which requested all medical authority upon which Dr. Kaim relied for his opinions[,] . . . the theory lacks any supporting scientific data, [and therefore] Dr. Kaim's opinion is conclusory and unreliable." Dr. Kaim Mot. 9. Defendants further argue that Dr. Kaim's opinion fails to offer or apply any scientifically verifiable methodology or analysis which supports his expert opinion on causation and that it fails to identify any authority which supports the position that the PET scan result is casually related to the alleged injury in question. *See id.* 10.

　　As previously discussed, federal law governs the admissibility of expert testimony. *Daubert* provides the "analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Accordingly, a district court should consider non–exhaustive factors in connection with the proposed expert testimony including "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Id.* at 244 (citing *Daubert*, 509 U.S. at 593–94). The *Daubert* analysis is "flexible," and the factors set forth in *Daubert* "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150 (citation omitted).

In his initial Rule 26(a) expert report, Dr. Kaim describes his qualifications. *See* Dr. Kaim Mot., Ex. A at 1. Although not one of the explicit *Daubert* factors, the *Daubert* factors are non–exhaustive. He further states that he personally examined Plaintiff and his methodology included reviewing Plaintiff's EEG, PET scan, and a neuropsychological evaluation. *Id.* at 2–3. In the Addendum—which is a supplement to Dr. Kaim's expert report—to his original expert report, Dr. Kaim attached a bibliography of thirty–one journal articles and medical studies that examined the use and efficacy of PET brain scan in the evaluation of TBI. *See* Pl.'s Brief, Exs. ECF Nos. 100–103. These studies show that Dr. Kaim's methods have been subjected to the requirements under *Daubert*, including: 1) can be or have been tested; (2) have been subjected to peer review and publication; (3) have a known or potential rate of error or standards controlling its operation; and (4) are generally accepted in the relevant scientific community.

Moreover, the underlying data used by Dr. Kaim was not flawed and his opinion is therefore reliable. Dr. Kaim personally examined Plaintiff on numerous occasions and used those personal observations in conjunction with the results of the medical records he reviewed to form his opinion. *See, e.g.*, Dr. Kaim Dep. 22:7–30:16, 36:8–37:8, 92:17–95:6. Any questions concerning his ultimate conclusion are ultimately the province of the fact–finder. Accordingly, the Court denies Defendants' Dr. Kaim Motion on this ground.

## B.  *First Flynn Motion*

Defendants move the Court to strike the C. Flynn Report as untimely and ask that the Court exclude Curtis Flynn as an expert witness. *See* First Flynn Mot. 1–10. Plaintiff argues that the C. Flynn Report is timely because it is not a new opinion, but rather a supplement to the J. Flynn Preliminary Report. Plaintiff also contends that any delay in submitting the report is

justified.  Finally, Plaintiff responds that Defendants objection is untimely.  *See* First Flynn Resp. ¶¶ 1–5.

## 1.  Whether the C. Flynn Report is a Supplement or New Opinion

The Court must initially determine whether the C. Flynn Report is a supplement to the J. Flynn Preliminary Report or a new opinion.  If the C. Flynn Report is a supplement, then the Court's analysis is guided by Rule 26 of the Federal Rules of Civil Procedure.  Rule 26(e)(2) states that "[a]ny additions or changes to [an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

The Court believes, however, that the proper way of analyzing the C. Flynn Report is as a new opinion and not a supplementation.  The C. Flynn Report is signed by Curtis Flynn whereas the J. Flynn Preliminary Report is signed by John J. Flynn.  Plaintiff does not cite to and the Court's own research did not uncover any authority that allows for the supplementation of an expert report by a different expert witness.  In fact, the Court's research revealed the opposite. *See In re Enron Corp.*, 2007 WL 5023541, at *8–11 (finding report prepared by different expert was new opinion and not supplemental report); *Gilbane*, 2005 WL 838679, at *9 ("[T]he concept of a supplemental report suggests that the supplemental opinions will be the opinions of the expert who prepared the original report, not the opinions of a different expert . . . .").

Although Plaintiff asserts that the J. Flynn Preliminary Report contains the joint opinion of Curtis and John J. Flynn, the Federal Rules requires an individual expert report for each expert.  Because John J. Flynn is identified as the author of the J. Flynn Preliminary Report and Curtis Flynn is not identified anywhere in the report, it follows that the J. Flynn Preliminary Report is properly attributed solely to John J. Flynn.

The Court now turns to the timeliness of the C. Flynn Report. Pursuant to the Court's Scheduling Order, Plaintiff's expert reports were originally due on June 20, 2014. *See* Scheduling Order 2. The parties mutually agreed to extend the deadline to September 1, 2014. *See* Stipulation to Extension of Time for Discovery, ECF No. 49. Plaintiff did not submit the C. Flynn Report until December 18, 2014, one hundred and nine (109) days after the mutually agreed deadline. Plaintiff's report was therefore untimely and in violation of Rule 26(a).

## 2. Whether to Strike Curtis Flynn as an Expert

The proper sanction for Plaintiff's violation of Rule 26(a) is found in Federal Rule of Civil Procedure 37(c)(1). Rule 37(c) provides, in pertinent part, that

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . . In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including [striking pleadings in whole or in part];

*See* Fed. R. Civ. 37(c)(1). The rule expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless. *See id.*

Defendants have moved to strike Curtis Flynn as an expert in this case. *See* First Flynn Mot. ¶ 14. Courts in the Fifth Circuit undertake a four–part test, based on Rule 37 of the Federal Rules of Civil Procedure, for determining whether the exclusion of expert testimony is an appropriate sanction. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *see also Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999). Courts examine four factors under this test: (1) the party's explanation, if any, for failure to comply with the scheduling

order; (2) the prejudice to the opposing party if the witness is allowed to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the testimony. *See Barrett*, 95 F.3d at 380.

*a. First Factor: Party's Explanation*

Plaintiff argues that his failure to comply with the Scheduling Order was unavoidable. Plaintiff first claims that he was unable to provide Curtis Flynn with pictures of the vehicle damage or a witness statement until December 10, 2014. *See* First Flynn Resp. ¶ 7. Plaintiff states that he did not have first–hand access to the vehicle because it was a borrowed car, and he was unable to locate the owner. *See id.* ¶ 11. Finally, Plaintiff claims that his injury precluded him from providing first–hand information to Curtis Flynn. *See id.* ¶ 10.

The Court is not convinced that Plaintiff was as diligent in his investigation as he claims. Giving Plaintiff the benefit of the doubt as to his claim of diligence in locating the owner of the vehicle and the limitations of his memory, the information sought was still readily ascertainable over a year ago. Defendants, in response to Plaintiff's request for production, produced the repair estimate that contained the name, address, and telephone number of the repair shop that took the photographs and of the insurance company requesting the repair estimate and photographs on January 24, 2014. *See* First Flynn Reply, Ex. 2. Plaintiff did not contact the repair company until no later than November 20, 2014, at which time he received the requested information. *See* First Flynn Response, Ex. 4 at 1–2. This information was then not forwarded to Curtis Flynn until December 10, 2014. *See* First Flynn Response, Ex. 4 at 1. Curtis Flynn produced his report soon after on December 18, 2014. Any delay in producing that report was a direct result of Plaintiff not providing him with the information sooner. Because that delay was

completely within Plaintiff's control, his explanation does not justify the delay in producing the

C. Flynn Report. The first factor weighs in favor of excluding the C. Flynn Report.

*b.  Second Factor: Prejudice to the Opposing Party*

Defendants claim that the C. Flynn Report contains the following new material opinions:

(1) construction of a scale model of damage profile to Plaintiff's vehicle, (2) impact analysis, (3)

damage based energy analysis, (4) closing/impact speed, (5) g–force experienced by Plaintiff, (6)

duration of g–force, (7) the distance traveled by Defendant's tractor trailer after impact and (8)

the distance traveled by Plaintiff's vehicle after impact. *See* First Flynn Mot. ¶ 19. Defendants

state their expert designation and report was October 31, 2014. *See* First Flynn Mot. ¶ 20. *Ipso*

*facto*, they were prejudiced in the preparation of their own expert witnesses who were unable to

review Curtis Flynn's opinion.

Plaintiff responds that Defendants have not come to the Court with clean hands. Plaintiff

states that Defendants designation of experts on October 31, 2014, was beyond the bounds of

their agreement. *See* First Flynn Resp. ¶ 26. Plaintiff further claims that Defendants are the

cause for any delay in the proceedings because Defendant Hector Gutierrez Sanchez had not

been produced for deposition and he had information needed for the report. *See* First Flynn

Resp. ¶¶ 26, 28. Finally, Plaintiff objects on the grounds that Defendants motion is untimely.

Some of Plaintiff's arguments are irrelevant to the Court's consideration under this

factor. The Court focuses on whether Defendants objected in a timely manner. Rule 26 of the

Federal Rules of Civil Procedure states that parties must file any objections to expert disclosures

within fourteen days after the disclosures are made. *See* Fed. R. Civ. P. 26(a)(3). Plaintiff

submitted his C. Flynn Report on December 18, 2014. Defendants filed their First Flynn Motion

on January 6, 2015. Defendants' motion is untimely.

The new opinion offered by Curtis Flynn is significantly different that any previously disclosed expert opinion. It offers much more depth and analysis and incorporates data and evidence that was missing from the previous expert report. Defendants' experts did not have a chance to review that information before they submitted their own reports. However, although Defendants are prejudiced by the untimely expert report, that prejudice is offset to some degree by Defendants' failure to object in a timely manner. This factor therefore weighs in favor of striking Curtis Flynn but not as strongly as it otherwise would.

c.  *Third Factor: Importance of the Testimony*

Plaintiff claims that Curtis Flynn's testimony is crucial to his case. *See* First Flynn Resp. ¶¶ 31–33. In his briefing, Plaintiff argues that the new opinions expressed in the C. Flynn Report are crucial because Plaintiff is unable to describe the accident himself due to his injuries. *See id.* ¶¶ 31–33. Plaintiff argues that "[t]he resting point of the vehicle and the high impact forced described in [the C. Flynn Report] are crucial for the jury to understand why Plaintiff lost consciousness and [why there are] lesions in his brain." *See id.* ¶ 32. Defendants acknowledge the importance of the testimony, but notes that were the Court to exclude Curtis Flynn, Plaintiff could still rely on John J. Flynn to provide similar testimony. *See* First Flynn Mot. ¶ 22.

The Court conducted a hearing on the matter on January 15, 2015. At that time, Plaintiff, through counsel, stated that his intention from the beginning was to have Curtis Flynn testify and not John J. Flynn. In fact, Plaintiff claimed that he did not know of John J. Flynn's existence until Defendants filed the First Flynn Motion. The Court is not swayed by this argument, however, because Plaintiff was aware enough of the difference between Curtis Flynn and John J. Flynn to designate them separately in his modified Amended Expert Designation submitted on July 16, 2014.

The Court has a difficult task in properly balancing this factor in light of these circumstances. The Court will err on the side of caution. Because Plaintiff lost consciousness as a result of the collision and cannot testify on his own behalf regarding the specifics of the accident, the Court is persuaded that the opinion contained in the C. Flynn Report is extremely crucial to Plaintiff's case. The Court does not believe that the J. Flynn Preliminary Report is a suitable substitute because the J. Flynn Preliminary Report only includes information from the police report and survey, and does not contain opinion regarding the level of impact and force generated in the collision. The Court therefore finds that this factor balances strongly in favor of not striking Curtis Flynn.

*d. Fourth Factor: Possibility of Curing Prejudice*

Defendants first note that Plaintiff never requested a continuance from the Court. *See* First Flynn Mot. ¶ 21. Regardless, Defendants argue that Plaintiff's alleged past dilatory conduct offers no reason to believe Plaintiff will conduct himself in a diligent manner. *See* First Flynn Mot. ¶ 21. Defendants further points out that any additional delay will increase their costs and further prejudice them. *See id.* ¶ 21.

Plaintiff responds that he has acted in good faith and any failure to do otherwise was not willful. *See* First Flynn Resp. ¶¶ 24–25. As a show of its good faith, Plaintiff points to the course of litigation which has included many mutual time extensions and reschedules. *See id.* ¶ 26. Plaintiff further states that he is amendable to Defendants supplementing their own expert reports in light of the C. Flynn Report. *See* First Flynn Resp. ¶ 34.

The Court believes that any prejudice to Defendants can be cured by allowing Defendants time to properly prepare their own expert witnesses. The trial schedule itself will not be disrupted because it was likely to be continued anyway. Trial is currently set for March 9, 2015,

but Plaintiff filed a timely Notice of Conflicting Trial Setting on December 16, 2014. *See* ECF

No. 98. The Court has not yet acted on it. Moreover, although it is unclear whether Curtis Flynn

has yet been deposed in this case, it is apparent that some depositions still remain to be taken.

Granting a continuance would therefore not be burdensome on the Court and would partly reduce

the prejudice on Defendants. This factor therefore weighs in favor of not striking Curtis Flynn.

e. *Barrett Factor Test Conclusion*

Applying the Fifth Circuit's factors, the Court concludes that striking Curtis Flynn is too

strong of a sanction for the circumstances. Although Plaintiff does not have a persuasive

justification for his failure to follow the Court's Scheduling Order, the Court does not believe

that Plaintiff intentionally delayed the proceedings. In addition, Curtis Flynn's testimony is too

crucial to his case to exclude. The Court is mindful of the prejudice suffered by Defendants but

believes any such prejudice is easily cured by a continuance of the trial date that would allow for

the deposition of Curtis Flynn and the supplementation of their own experts' reports.

Accordingly, the Court denies Defendants' First Flynn Motion.

Noncompliance with the deadlines outlined in the Scheduling Order and the Federal

Rules of Civil Procedure, however, must result in appropriate sanctions to the offending party if

the deadlines are to carry meaning. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,

73 F.3d 546, 573 (5th Cir. 1996). Under Rule 37(b)(2), the Court may impose other appropriate

sanctions in lieu of striking the expert "unless the failure was substantially justified or is

harmless." Fed. R. Civ. P. 37(c). The Court is mindful that Defendants suffered additional

expenses in bringing this motion. Plaintiff was not substantially justified in failing to produce

the C. Flynn Report in a timely manner and the failure was not harmless because of the expenses

incurred by Defendants. The Court therefore orders Plaintiff's counsel to reimburse Defendants

for the reasonable attorney's fees and expenses incurred in connection with *this* particular

motion. Any costs associated with the Dr. Kaim Motion or the Second Flynn Motion are not to

be included in the calculation. Shared costs are to be divided in a proportionate manner—such

as expenses related to the January 15, 2015, hearing—a hearing which involved argument of

more than just the First Flynn Motion.

## C. *Second Flynn Motion*

Defendants argue that based on Plaintiff's representations to the Court, the J. Flynn

Preliminary Report and the C. Flynn Report should be struck, and all opinions from Curtis Flynn

should be excluded, because "the preliminary report does not contain a complete statement of all

opinions [he] will express and the basis and reasons for them as required under Federal Rules of

Civil Procedure 26." Second Flynn Mot. 3. Plaintiff responds that Defendants' objection is

untimely. *See* Second Flynn Resp. ¶ 1. Plaintiff further contends that the opinion contained in

the J. Flynn Preliminary Report, which he characterizes as Curtis Flynn's, was a complete

opinion at the time the report was submitted. *See* Second Flynn Resp. ¶¶ 2, 10.

The Court first considers whether Defendants' objection is untimely. Defendants

correctly point out that they are not objecting on the grounds that the expert report is unreliable,

an objection which the Court's Scheduling Order limits to no later than twenty days after the

expert report is submitted. *See* Second Flynn Reply ¶¶ 1–2. However, they are not correct that

their objection is timely. As previously stated by this Court, the Federal Rules of Civil

Procedure provide that parties must file any objections to expert disclosures within fourteen days

after the disclosures are made. *See* Fed. R. Civ. P. 26(a)(3). Plaintiff submitted his J. Flynn

Preliminary Report on July 16, 2014. Defendants filed their Second Flynn Motion on January

20, 2015.  Defendants' motion is therefore untimely.  In the interest of justice, however, the

Court will consider the merits of the motion.

Defendants' motion was in response to assertions made by Plaintiff's counsel at a hearing

held on January 15, 2015, that the J. Flynn Preliminary Report was really a preliminary report

from Curtis Flynn.  The Court has already held that the opinions expressed in the J. Flynn

Preliminary Report cannot properly be attributed to Curtis Flynn because they were signed and

submitted by John J. Flynn, despite Plaintiff's contention.  *See supra* § III. B. 1.  Defendants'

argument regarding Curtis Flynn and the J. Flynn Preliminary Report is therefore moot.

The Court next considers whether the J. Flynn Preliminary Report is a proper expert

report as attributed to John J. Flynn.  Under Rule 26(a)(2)(B) of the Federal Rules of Civil

Procedure, the disclosures of certain expert witnesses must be accompanied by a written report

that contains "a complete statement of all opinions the witness will express and the basis and

reasons for them" and "the facts or data considered by the witness in forming [the expert

witness' opinions]."  Fed. R. Civ. P. 26(a)(2)(B); *see also Sierra Club*, 73 F.3d at 569 (finding

that Rule 26(a) requires initial expert disclosure to be complete and detailed).  The purpose of

this requirement is to "avoid the disclosure of 'sketchy and vague' expert information."  *Id.* at

571 (citing Fed. R. Civ. P. 26 Advisory Committee's Note).

The Advisory Committee's Note to Rule 26 provides that expert witnesses "must prepare

a detailed and complete written report, stating the testimony the witness is expected to present

during direct examination, together with the reasons therefor."  Rule 26 Advisory Committee's

Note (1993 Amendments).  "The purpose of a 'detailed and complete' expert report as

contemplated by Rule 26(a) . . . is to prevent an ambush at trial."  *In re Enron Corp. Secs.*, 2007

WL 5023541, at *1 (quoting *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiena*

*de P.R.*, 248 F.3d 29, 35 (1st Cir. 2001)) (some internal quotation marks omitted).  Whether an

expert report is sufficiently complete, detailed, and in compliance with the Rules so that surprise

is eliminated, unnecessary depositions are avoided, and costs are reduced depends on the nature

of the expert testimony and the opinions expressed.  *See Norris v. United States*, No. 3:11–CV–

1351–D, 2012 WL 1231804, at *2 (N.D. Tex. Apr. 12, 2012).

Here, the J. Flynn Preliminary Report is sufficiently complete.  There is nothing in the

report that is "sketchy or vague" and Defendants will not be ambushed at trial by the opinions

expressed in the report.  If John J. Flynn testifies at trial, he will be limited to the opinions

expressed in the report.  Whether his opinion did or did not consider various issues related to the

automobile collision is ultimately a question for the jury.  Accordingly, the Court denies

Defendants' Second Flynn Motion.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED THAT** Defendants Hector Gutierrez Sanchez and

Transportadora Norte de Chihuahua S.A. de C.V.'s "Objection to the Reliability of Opinions

Offerd [(sic)] By Plaintiff's Retained Expert, Dr. Boris Kaim" (ECF No. 74) is **DENIED**.

**IT IS ORDERED THAT** Defendants Hector Gutierrez Sanchez and Transportadora

Norte de Chihuahua S.A. de C.V. may designate a rebuttal expert or file a supplemental expert

report to dispute specifically the studies provided in Dr. Kaim's Addendum no later than **ten (10)**

**days** from the date of this Order.  Plaintiff Sylvester Charles may file an objection, if any, no

later than **ten (10) days** of receipt of the written report of the rebuttal expert's proposed

testimony.

**IT IS ALSO ORDERED THAT** Defendants Hector Gutierrez Sanchez and Transportadora Norte de Chihuahua S.A. de C.V.'s "Motion to Strike and Exclude all Opinions of Curtis Flynn" (ECF No. 105) is **DENIED.**

**IT IS ORDERED THAT** Plaintiff's counsel reimburse Defendants for the reasonable attorney's fees and expenses incurred in connection with Defendants' "Motion to Strike and Exclude all Opinions of Curtis Flynn" (ECF No. 105).

**IT IS FURTHER ORDERED THAT** Defendants Hector Gutierrez Sanchez and Transportadora Norte de Chihuahua S.A. de C.V.'s "Objection to Plaintiff's Designation of Curtis Flynn and Preliminary Expert Report" (ECF No. 115) is **DENIED.**

**IT IS FINALLY ORDERED THAT** the trial date in the above–captioned matter is **RESCHEDULED** for <u>March 30, 2015 at 9:00 a.m.</u>

SO ORDERED and SIGNED this <u>24th</u> day of February, 2015.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE